**INDIANA GAMING COMPANY, L.P., and Cultural Resource Analysts, Inc., Appellants–Defendants,**

v.

**James BLEVINS, Alan Harris, Daniel J. Keane, United Archaeological Field Technicians International Union of Operating Engineers, Local 141, Appellees–Plaintiffs.**

No. 15A01–9907–CV–243.

Court of Appeals of Indiana.

Feb. 22, 2000.

---

Steven C. Coffaro, Jerome C. Randolph, Heather Thurston, Keating, Muething & Klekamp, P.L.L., Cincinnati, Ohio, Attorneys for Appellant Indiana Gaming Company, L.P.

John W. Woodard, Jr., Wyatt, Tarrant & Combs, New Albany, Indiana, Attorney for Appellant Cultural Resource Analysts, Inc.

Delmar P. Kuchaes II, James O. McDonald, Everett, Everett & McDonald, Max E. Goodwin, Bruce Aukerman, Mann Law Firm, Terre Haute, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

Indiana Gaming Company, L.P. ("Indiana Gaming") and Cultural Resource Analysts, Inc. ("CRA") bring this interlocutory appeal challenging the denial of their motions to dismiss the breach of contract action brought by James Blevins, Alan Harris, and Daniel J. Keane (together referred to as the "Archaeologists") and United Archaeological Field Technicians International Union of Operating Engineers, Local 141 (the "Union"). The parties raise a number of issues that we consolidate and restate as whether the Archaeologists and the Union (together referred to as the "Technicians") are third-party beneficiaries who can bring an action to enforce the terms of a contract between Indiana Gaming and the City of Lawrenceburg.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The City of Lawrenceburg (the "City") and Indiana Gaming entered into a contract to develop and operate a riverboat gaming operation in Lawrenceburg, Indiana. Included in the original contract and a second amendment (together referred to as the "Agreement") is language setting forth: (1) guidelines for the wages to be paid to laborers and mechanics of contractors, the construction manager, and subcontractors under the Agreement; and (2) that there shall be no third-party beneficiaries to the Agreement.

In connection with the development of the gaming operation, CRA served as a contractor for Indiana Gaming and hired the Archaeologists to perform services required for environmental compliance under the Agreement. The Archaeologists were paid $9.00 per hour, and $13.50 per hour for time worked in excess of forty hours per week. The Technicians allege that under the Agreement the Archaeologists should have been paid $18.00 per hour and $27.00 per hour, plus a fringe benefit, for time worked in excess of forty hours per week. CRA, the Archaeologists, and the Union are not parties to the Agreement.

The Technicians filed a four count, class action complaint for declaratory judgment, breach of contract, negligence, and constructive fraud against Indiana Gaming and CRA. Only the first two counts are directed at CRA. CRA and Indiana Gaming each filed a motion to dismiss for failure to state a claim upon which relief can be granted. The trial court held a hearing and denied both motions to dismiss. The trial court certified its order as appealable and stayed the trial court proceedings to permit appeal. Our court granted jurisdiction.

## DISCUSSION AND DECISION

### A. Standard of Review

■■■■ A motion to dismiss for failure to state a claim under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of a complaint. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 184 (Ind.Ct.App. 1999), *trans. denied.* When reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true and the pleadings are viewed in the light most favorable to the non-moving party. *Id.* A motion to dismiss is properly granted only when the allegations present no possible set of facts upon which the complainant can recover. *Barth Elec. Co. v. Traylor Bros.,* 553 N.E.2d 504, 506 (Ind.Ct.App. 1990) (citing *Employers Ins. of Wausau v. Comm'r of the Dep't of Ins.,* 452 N.E.2d 441, 444 (Ind.Ct.App.1983)). Our court applies essentially the same standard as the trial court to see whether the trial court acted properly in denying the motion to dismiss. *Bentz Metal Products Co. v. Stephans,* 657 N.E.2d 1245, 1247 (Ind.Ct.App. 1995).

### B. Third–Party Beneficiaries

■■■■ The Technicians seek to enforce wage provisions in the Agreement. Generally, only those who are parties to a contract or those in privity with a party have the right to enforce the contract. *OEC–Diasonics, Inc. v. Major,* 674 N.E.2d 1312, 1314–15 (Ind.1996). The Technicians are not parties to the Agreement nor do they allege to that they are in privity with a party to the Agreement. Even so, the Technicians may directly enforce the Agreement as third-party beneficiaries if they can show:

(1) A clear intent by the actual parties to the Agreement to benefit the Technicians;

(2) A duty imposed on one of the contracting parties in favor of the Technicians; and

(3) Performance of the Agreement terms is necessary to render the Technicians a direct benefit intended by the parties to the Agreement.

*Barth Elec.,* 553 N.E.2d at 506 (citing *Mogensen v. Martz,* 441 N.E.2d 34, 35 (Ind. Ct.App.1982)). It is not enough that performance of the Agreement would be of benefit to the Technicians. *OEC–Diasonics,* 674 N.E.2d at 1315 (citing *Kirtley v. McClelland,* 562 N.E.2d 27, 37 (Ind.Ct. App.1990), *trans. denied.*). The controlling factor is whether it was the intent of the parties to the Agreement to benefit the Technicians. *Barth Elec.,* 553 N.E.2d at 506. This intent must clearly appear from the terms of the Agreement. *In re Estate of Von Wendesse,* 618 N.E.2d 1332, 1337 (Ind.Ct.App.1993), *trans. denied.*

■■ The Technicians point to Section 5.21(b) to support their argument that they are intended third-party beneficiaries under the Agreement. In the original Agreement, Section 5.21(b) (titled "Labor Objectives") provides:

"(b) There shall be paid each laborer or mechanic of the Contractor, Construction Manager or Subcontractor engaged in Work under this Agreement a wage equal to the union contract wage in the Lawrenceburg area existing on the date of the issuance of the License, regardless of any contractual relationship which may be alleged to exist between the Contractor, Construction Manager or Subcontractor and such laborers or mechanics."

*Record* at 56.[1] Indiana Gaming and CRA point to Section 15.21 to support their

---

1. Section 5.21(b) was amended in the second amendment, deleting the existing language and inserting the following:

"(b) There shall be paid each laborer or mechanic of the Contractor, Construction Manager or Subcontractor engaged in Work under this Agreement a wage not less

than the prevailing wages in the Lawrenceburg area according to the prevailing wage schedule established by the State of Indiana and existing on the date thirty (30) days prior to the date on which the contract for such Work is released for bid (the "Wage Date"), regardless of any contractual rela-

argument that the Technicians cannot be third-party beneficiaries under the Agreement. Section 15.21 provides:

"*Section 15.21. No Third–Party Beneficiaries.* Nothing in this Agreement shall be construed as creating any rights or entitlement that inure to the benefit of any person or entity not a party of this Agreement (except Guarantor)."

*Record* at 85.[2]

 Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Kiltz v. Kiltz,* 708 N.E.2d 600, 602 (Ind.Ct.App. 1999), *trans. denied.* The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation. *Id.* Where the terms of a contract are clear and unambiguous, "the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions." *Id.*

Section 15.21 states, "Nothing in this Agreement shall be construed as creating any rights or entitlement that inure to the benefit of any person or entity not a party of this Agreement (except Guarantor)." This language clearly and unambiguously precludes the Technicians from being third-party beneficiaries under the Agreement. (*See Talman Home Fed. Sav. & Loan Ass'n of Illinois v. American Bankers Ins.,* 924 F.2d 1347, 1352–53 (5th Cir. 1991) (no right of recovery as third-party beneficiary in light of contract clause prohibiting third-party claim)); *Morse/Diesel,*

*Inc. v. Trinity Indus., Inc.,* 859 F.2d 242, 249 (2nd Cir.1988) ("Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling."); *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 647, 651–52 (Tex.1999) (section in contract stating that contract did not confer benefits on nonsignatory parties reflected parties' intent to have no third-party beneficiaries). Even so, the Technicians argue that the inclusion of Section 5.21(b) reveals an intent to make them third-party beneficiaries because Indiana Gaming and the City would not have included the mandatory "shall be paid" language if they had not intended for the Technicians to have the power to enforce these provisions.

 When interpreting a contract, the contract must be read as a whole and the court should accept an interpretation of the contract that harmonizes its provisions. *OEC–Diasonics,* 674 N.E.2d at 1315. We also should make every effort to avoid a construction of contractual language that renders any words, phrases, or terms ineffective or meaningless. *Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1316 (Ind.Ct.App.1991), *trans. denied.* Courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions. *George S. May Intern. Co. v. King,* 629 N.E.2d 257, 261 (Ind.Ct.App. 1994), *trans. denied.* The Technicians' assertion that Section 5.21(b) sets forth en-

tionship which may be alleged to exist between the Contractor, Construction [M]anager or Subcontractor and such laborers or mechanics; provided, however, all contracts bid prior to July 15, 1996, are deemed approved as to wage rates contained in said bid packages, provided the wage rates are paid by the contractors performing said work. If the contract is not awarded within ninety (90) days of the Wage Date, new prevailing wage rates shall be required and shall be such prevailing wage rates in effect on a date not more than thirty (30) days before the date of award of the contract."

*Record* at 114.

2. The second amendment, although not amending Section 15.21, contained the following language concerning third-party beneficiaries:

"*Section 4.04. No Third–Party Beneficiaries.* Nothing in this Amendment shall be construed as creating any rights or entitlements that inure to the benefit of any person or entity not a party to this Amendment (except Guarantor)."

*Record* at 119.

forceable rights is correct. Our interpretation of Section 15.21 does not render Section 5.21(b) meaningless or negate any rights, it merely limits the enforcement of those rights to certain individuals. By contrast, allowing the Technicians to enforce Section 5.21(b) of the Agreement as third-party beneficiaries would render Section 15.21 meaningless. The plain language of Section 15.21 reveals the intent of the parties to disallow a suit by anyone other than the Guarantor or a party to the Agreement.

We find that under the terms of the Agreement, the Technicians are not third-party beneficiaries. Being unable to proceed as third-party beneficiaries, the Technicians' allegations present no possible set of facts upon which they can recover. It is proper to grant Indiana Gaming's and CRA's motions to dismiss.

Reversed.

SHARPNACK, C.J., and RILEY, J., concur.